THE STATE OF OHIO, APPELLANT, *v.* ATHON, APPELLEE.

[Cite as *State v. Athon,* **136 Ohio St.3d 43, 2013-Ohio-1956.**]

*R.C. 149.43—Crim.R. 16—When an accused directly or indirectly makes a public-records request for information that could have been obtained from the state though discovery, that public-records request is the equivalent of a demand for discovery, and a reciprocal duty of disclosure arises in accordance with Crim.R. 16.*

(No. 2012-0628—Submitted February 6, 2013—Decided May 15, 2013.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-110236, C–110237, C–110238, C–110239, and C–110290,

2012-Ohio-765.

_____

**SYLLABUS OF THE COURT**

1. Although R.C. 149.43 provides an independent basis for obtaining information potentially relevant to a criminal proceeding, it is not a substitute for and does not supersede the requirements of criminal discovery pursuant to Crim.R. 16.

2. Neither R.C. 149.43 nor Crim.R. 16 precludes an accused from obtaining public records from law enforcement agencies, but Crim.R. 16 is specific to the procedure in criminal cases and therefore is the preferred mechanism to obtain discovery from the state.

3. When an accused directly or indirectly makes a public records request for information that could have been obtained from the state though discovery, that public records request is the equivalent of a demand for discovery, and a reciprocal duty of disclosure arises in accordance with Crim.R. 16.

_____

**O'DONNELL, J.**

{¶ 1}   The state of Ohio appeals from a judgment of the First District Court of Appeals that reversed an order of the trial court compelling Gary Athon to provide reciprocal discovery to the state after he used a public records request instead of Crim.R. 16 to obtain information relating to his pending criminal case from the State Highway Patrol.   The appellate court held that a public records request is not a demand for discovery and that Athon therefore owed no duty of reciprocal disclosure to the state as required by Crim.R. 16.

{¶ 2}   Neither R.C. 149.43, the Ohio Public Records Act, nor Crim.R. 16, the discovery rule in criminal cases, precludes an accused from requesting or obtaining public records relating to a pending criminal proceeding.   However, Crim.R. 16 specifically controls the process of discovery of information in criminal cases and provides that if an accused demands discovery from the state, the accused owes a reciprocal duty of disclosure.   Here, Athon made no Crim.R. 16 demand of the prosecutor but instead submitted a public records request directly to the State Highway Patrol.   Circumventing the discovery process frustrates the purpose of Crim.R.16, which is to regulate the fair exchange of information between parties to a criminal case.   When an accused directly or indirectly makes a public records request for information that could have been obtained from the state though discovery, that public records request is the equivalent of a demand for discovery, and a reciprocal duty of disclosure arises in accordance with Crim.R. 16.

{¶ 3}   Because Athon received evidence from the State Highway Patrol that could have been obtained from the prosecutor through discovery, he had a reciprocal duty to provide discovery to the state as provided in Crim.R. 16. Accordingly, the judgment of the court of appeals is reversed.

**Facts and Procedural History**

{¶ 4}  On December 20, 2010, Sergeant Cory Wright of the Ohio State Highway Patrol arrested Athon and charged him with operating a motor vehicle while under the influence of alcohol, speeding, and failing to reinstate his driver's license.  Athon, represented by attorney Steven Adams, pleaded not guilty to the charges.  Rather than participating in discovery pursuant to Crim.R. 16, Adams asked attorney Christopher Finney to obtain evidence related to Athon's arrest by making a public records request.

{¶ 5}  In a letter sent on January 11, 2011, Finney requested the following records from the State Highway Patrol:

> 1. Any and all video and audio recordings from the Police cruiser operated by Sergeant Corey [sic] Wright, Batavia Patrol Post, from the beginning of his shift on December 19, 2010 through the end of his shift on December 20, 2010.
>
> 2. Any and all Impaired Driving Reports drafted and/or printed by Sergeant Corey [sic] Wright, Batavia Patrol Post, relating to any OVI arrests made on December 19, 2010 and December 20, 2010, including, but not limited to, narrations on statements of facts, field sobriety test reports, and evaluations.
>
> 3. Any and all citations issued by Sergeant Corey [sic] Wright, Batavia Patrol Post, dated December 19, 2010 and December 20, 2010.
>
> 4. A copy of the Operator's Certificate for Sergeant Corey [sic] Wright, Batavia Patrol Post, for the BAC DataMaster breath test machine in effect on December 19, 2010 and December 20, 2010.

**{¶ 6}** In addition, Finney sought other records related to the specific BAC DataMaster used by Wright on December 20, 2010, including the operator's manuals and records relating to calibration checks, maintenance, inspections, diagnostics, and service.

**{¶ 7}** Notably, the only alcohol-related traffic stop that Wright conducted between December 19 and December 20, 2010, involved Athon. Further, Wright testified that he would have assembled the same materials in response to a defense request for discovery in a case involving charges of operating a vehicle while under the influence of alcohol.

**{¶ 8}** Ten days after receiving the request, the State Highway Patrol provided Finney with recordings of the traffic stop on DVD and CD as well as hundreds of pages of documents related to the BAC DataMaster. Finney then delivered these records to Adams.

**{¶ 9}** On March 21, 2011, the state moved the trial court to compel Athon to provide discovery, asserting that the public records request amounted to a demand for discovery and triggered a reciprocal duty of disclosure pursuant to Crim.R. 16(H). The trial court determined that Finney had obtained public records related to Athon's arrest "at the request of a straw person" and then provided them to Athon. It therefore ordered Athon to provide discovery to the state, finding that "when the Defendant, via other people, requested and received public records from an agent of the State of Ohio in this contested criminal proceeding, the request is in effect, a demand for discovery on the State of Ohio."

**{¶ 10}** On Athon's appeal, the First District reversed, holding that "a public records request by a criminal defendant, or on behalf of a criminal defendant, seeking public records pertaining to his or her pending criminal case is not tantamount to a demand for discovery. Such a request does not trigger a defendant's duty of disclosure under Crim.R. 16(H)." 2012-Ohio-765, ¶ 11-12. The appellate court explained that because Athon had never served a "written

demand or other pleading on the prosecuting attorney seeking discovery," he owed no duty to provide discovery to the state. *Id.* at ¶ 8.

{¶ 11} On appeal to this court, the state relies on *State ex rel. Steckman v. Jackson,* 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), for the proposition that Crim.R. 16 provides the sole mechanism for obtaining information that relates to a pending criminal case from the state or an agent of the state, asserting that an accused cannot make a public records request to receive documents that are available through discovery. It asserts that when criminal defendants use public records requests to circumvent discovery rules, they act contrary to the public policy against gamesmanship and "trial by ambush" and undermine the intent of the 2010 amendment to Crim.R. 16 to establish "open discovery" in criminal cases. As a remedy for such conduct, the state maintains that courts should treat a public records request made to law enforcement as a demand for discovery on the state, triggering a reciprocal duty of disclosure by the accused.

{¶ 12} Athon's position is that *Steckman* bars criminal defendants from moving for the production of public records only in the criminal proceeding itself and prevents an accused from using a public records request to obtain evidence that is *not* subject to discovery pursuant to Crim.R. 16. He points out that *he* did not file a pretrial motion to compel the production of public records in his criminal proceeding and that he sought only discoverable records, including a routine incident report and the results of breath-machine tests. He further claims that nothing in the Public Records Act restricts his access to public records and that because he has not made a demand for discovery of the prosecuting attorney, he cannot be compelled to provide reciprocal discovery. Finally, he urges both that the Public Records Act—which grants a substantive right to obtain records—supersedes this court's procedural discovery rules and that restricting his access to public records would violate his right to compulsory process and the effective assistance of counsel.

**{¶ 13}** Thus, this case presents two issues: whether an accused in a criminal case may request public records to obtain information that could be demanded from the state during discovery, and if so, whether such a request triggers a reciprocal duty of disclosure to the state.

## Law and Analysis

**{¶ 14}** In *Steckman*, 70 Ohio St.3d at 421, 639 N.E.2d 83, we confronted the "continuing and ever-increasing problem of the use (and attempted use) of R.C. 149.43 (public records law) as a vehicle to obtain records from law enforcement officials and the contents of the files of prosecutors in pending criminal cases." We noted that some had used the public records law to obtain information not subject to discovery and to bring about interminable delay in their prosecutions. *Id.* at 428.

**{¶ 15}** In that case, we recognized that the Public Records Act permits anyone to obtain public records pursuant to R.C. 149.43(A), regardless of purpose*, id.* at 427, but we held that in a criminal proceeding, a defendant may use only Crim.R. 16 to obtain discovery, *id.* at 429. We explained that "a demand [for discovery] pursuant to Crim.R. 16(B)(1)(c), directed to the prosecuting attorney, should be sufficient to obtain police investigatory records to which a defendant is otherwise entitled." *Id.* at 435.

**{¶ 16}** Accordingly, our decision in *Steckman* does not bar an accused from obtaining public records that are otherwise available to the public. Although R.C. 149.43 provides an independent basis for obtaining information potentially relevant to a criminal proceeding, it is not a substitute for and does not supersede the requirements of criminal discovery pursuant to Crim.R. 16. As we reiterated in *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, " ' "[t]he philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial." The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to

produce a fair trial.' " *Id.* at ¶ 18, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987), quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978).

{¶ 17} In 2010, this court amended the discovery process in criminal cases. Crim.R. 16(A) now states, "This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A) further indicates that "[a]ll duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal."

{¶ 18} We continue to recognize that neither R.C. 149.43 nor Crim.R. 16 precludes an accused from obtaining public records from law enforcement agencies, but Crim.R. 16 is specific to the procedure in criminal cases and therefore is the preferred mechanism to obtain discovery from the state.

{¶ 19} Crim.R. 16(H) specifies that "[i]f the defendant serves a written demand for discovery or any other pleading seeking disclosure of evidence on the prosecuting attorney, a reciprocal duty of disclosure by the defendant arises without further demand by the state." Athon's claim that he is not subject to reciprocal discovery because he has not made a demand on the state is not well taken. When an accused directly or indirectly makes a public records request for information that could be obtained from the prosecutor through discovery, the request is the equivalent of a demand for discovery and triggers a duty to provide reciprocal discovery as contemplated by Crim.R. 16.

{¶ 20} Our resolution here accords with decisions of federal circuit courts holding that the Freedom of Information Act ("FOIA") "is not a substitute for discovery in criminal cases," *Roth v. United States Dept. of Justice*, 642 F.3d 1161, 1177 (D.C.Cir.2011), "[n]or does FOIA otherwise expand the scope of

discovery available in a criminal case," *United States v. Brooks*, 449 Fed.Appx. 91, 93 (3d Cir.2011). As the Ninth Circuit Court of Appeals stated in *United States v. United States Dist. Court*, 717 F.2d 478, 482 (9th Cir.1983), "Rule 16 of the Federal Rules of Criminal Procedure, not the Freedom of Information Act, is the basic rule that will control discovery." *See also United States v. Murdock*, 548 F.2d 599, 602 (5th Cir.1977) ("Although information obtained through the FOIA may be useful in a criminal trial, we find that the FOIA was not intended as a device to delay ongoing litigation or to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure"); *Fruehauf Corp. v. Thornton*, 507 F.2d 1253, 1254 (6th Cir.1974) ("We are of the view that the Freedom of Information Act was not intended to serve as a substitute for criminal discovery").

## Conclusion

**{¶ 21}** Neither R.C. 149.43 nor Crim.R. 16 precludes an accused from seeking public records that are relevant to a criminal proceeding. However, the Public Records Act is neither a substitute for nor an alternative to criminal discovery conducted pursuant to Crim.R. 16. Accordingly, when an accused directly or indirectly makes a public records request for information that could have been obtained from the state through discovery, the public records request is the equivalent of a demand for discovery and the accused owes a reciprocal duty of disclosure to the state as contemplated by Crim.R. 16.

**{¶ 22}** Because it is not disputed that Athon indirectly obtained discoverable information from the State Highway Patrol through a public records request, he is obligated to provide reciprocal discovery to the state pursuant to Crim.R. 16. Accordingly, the judgment of the court of appeals is reversed.

Judgment reversed.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., concur.

PFEIFER, KENNEDY, and O'NEILL, JJ., dissent.

---

**KENNEDY, J., dissenting.**

{¶ 23} Respectfully, I dissent. I would affirm the judgment of the court of appeals, which held that "the plain meaning" of Crim.R. 16 and R.C. 149.43 supports the defense claim that a public-records request is not a demand for discovery. 2012-Ohio-765, ¶ 11. Neither Crim.R. 16(A) nor *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), compels the result that the majority embraces in this case. *See Athon* at ¶ 10. Indeed, the plain language of Crim.R. 16(A) contradicts it. Consequently, I would affirm the judgment of the court of appeals.

{¶ 24} Crim.R. 16(A) reads as follows:

(A) Purpose, Scope and Reciprocity. This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. *Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.*

(Emphasis added.)

{¶ 25} Crim.R. 16(A) contains much aspirational language but only one requirement. That requirement—that all parties supplement their discovery disclosures—is not triggered until the defense makes a demand for discovery. Nothing in the rule supports the majority's holding that a "public records request [direct or indirect] is the equivalent of a [defendant's] demand for discovery, and

a reciprocal duty of disclosure arises in accordance with Crim.R. 16." Majority opinion at paragraph three of the syllabus.

{¶ 26} Our holdings in *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph five of the syllabus, and *State ex rel. Rasul-Bey v. Onunwo*r, 94 Ohio St.3d 119, 120-121, 760 N.E.2d 421 (2002), are undermined by the rule change the court effectively makes today. Those cases clearly entitle defendants to public records without their undertaking any obligations pursuant to the Rules of Criminal Procedure. While I am sympathetic to the concerns of the state, I believe that any amendments to Crim.R. 16(A) should be made through our rule-making authority under Article IV, Section 5(B) of the Ohio Constitution. With today's holding, the court is bypassing its Commission on the Rules of Practice and Procedure, which engages in extensive committee work. The court then seeks public comment before amending its most important rules.

{¶ 27} The decision of the majority may lead to unintended consequences. As Justice O'Donnell emphasized in a civil case, "This is a matter better left to the Commission on the Rules of Practice and Procedure for drafting changes to the Civil Rules and should not be resolved by case authority, which will serve only to frustrate the task of trial judges in resolving cases in accordance with Civ.R. 56." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 37 (O'Donnell, J., dissenting).

{¶ 28} I encourage the Commission on the Rules of Practice and Procedure to review the effects of Crim.R. 16(A) and recommend necessary changes to it after careful study, and this court should amend the rule, if necessary, after public comment. But to respect our rule-making procedure and follow our precedent, I would affirm the judgment of the court of appeals.

PFEIFER and O'NEILL, JJ., concur in the foregoing opinion.

_____

John P. Curp, Cincinnati City Solicitor, Marva K. Benjamin, Senior Assistant Prosecuting Attorney, and Charles A. Rubenstein, Assistant Prosecuting Attorney, for appellant.

The Law Office of Steven R. Adams, Steven R. Adams, and Marguerite Slagle, for appellee.

Sirkin Kinsley Co., L.P.A., Jennifer M. Kinsley, and H. Louis Sirkin, urging affirmance on behalf of amicus curiae Ohio Justice and Policy Center.

The Law Firm of Curt C. Hartman and Curt C. Hartman; Finney, Stagnaro, Saba & Patterson Co., L.P.A., and Christopher P. Finney, urging affirmance on behalf of amicus curiae Mark W. Miller.

Timothy Young, Ohio Public Defender, and Francisco E. Luttecke, Assistant Public Defender, urging affirmance on behalf of amicus curiae Office of the Ohio Public Defender.

Michele L. Berry, on behalf of amicus curiae the Innocence Network.

_____